UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JBR, INC., | Case No. 12-cv-02377 NC |
| Plaintiff, | **ORDER GRANTING MOTIONS FOR ALTERNATIVE SERVICE AND EXTENSION OF TIME TO SERVE** |
| v. | |
| CAFÉ DON PACO, INC., ALVARO MONTEALGRE, and ROBERTO BENDAÑA, | Re: Dkt. Nos. 24, 25, 27 |
| Defendants. | |

Plaintiff JBR, Inc. alleges that defendants Café Don Paco, Inc., Roberto Bendaña, and Alvaro Montealgre failed to perform in accordance with contracts for the sale of coffee. The clerk has twice denied JBR's request for entry of default for failure to serve defendants. JBR seeks a court order authorizing service by email, as Bendaña and Montealgre now live in Nicaragua. The issues are (1) whether Café Don Paco has been served, (2) whether email service on Bendaña and Montealgre is appropriate, and (3) whether defective service is permissible. JBR also moves for an extension of time to serve defendants. The Court considers these issues suitable for determination on the papers and VACATES the hearing set for May 8, 2013. Because the Court finds that international agreement does not prohibit service by email in Nicaragua and email is reasonably calculated to provide defendants with actual notice, the Court GRANTS JBR's motion for alternative service. Because JBR has shown good cause for the delay in serving defendants, the Court GRANTS JBR's motion for an extension of the time to complete service.

# I. BACKGROUND

## A. The Parties

Plaintiff JBR, Inc. is a California corporation, doing business as Rogers Family Company ("JBR"), which provides community aid for sustainable coffee farming to its coffee suppliers. Compl., Dkt. No. 1 ¶ 1, 9. Defendant Café Don Paco, Inc. is a Texas corporation operating in San Antonio, Texas, that imports and distributes coffee from a sister company in Nicaragua, Café Don Paco, S.A. *Id.* ¶ 3. Defendant Roberto Bendaña is the son of Café Don Paco's founder, Francis Ernest Bendaña Radzevich, and a shareholder of the company. *Id.* ¶ 3, 10. Bendaña is a resident of Texas. *Id.* ¶ 3. Defendant Alvaro Montealgre is the brother-in-law of Bendaña and believed to be the President of Café Don Paco and its Agent for Service of Process in San Antonio. Motion for Alternate Service, Dkt. No. 24 at 3; Smoot Decl., Dkt. No. 24-1 ¶ 2. Montealgre was born in Nicaragua but resides in Texas. Dkt. No. 1 ¶ 4.

## B. Facts Alleged in the Complaint

JBR formed a relationship with the owners of Café Don Paco in 1997, and JBR's president, Jon Rogers, maintained a close relationship with Café Don Paco's founder and namesake, Francis Bendaña. *Id.* ¶ 9-11. JBR and Café Don Paco had an ongoing arrangement under which JBR buys "green coffee" from coffee farmers in Nicaragua with whom Café Don Paco has a relationship. *Id.* ¶ 20. In addition, since 1997, JBR has given over $500,000 in aid to Café Don Paco's community for children's nutrition programs, building health clinics, housing, and schools, and hiring teachers. *Id.* ¶ 9, 11.

On October 14, 2008, JBR entered into a written agreement with Café Don Paco, now owned and operated by Roberto Bendaña and Montealgre, to lend Café Don Paco $350,000, which would be repaid in green coffee after March 1, 2009. *Id.* ¶ 13. In December 2010 and January 2011, Bendaña requested two loans of $200,000 related to the 2010-11 growing season. *Id.* ¶ 14-18. A promissory note secured the first $200,000 and set the terms for repayment, and JBR wired $200,000 to Café Don Paco's account at Sterling Bank in San Antonio, Texas, on December 13, 2010. *Id.* ¶ 16. In January 2011,

1  JBR loaned Café Don Paco another $200,000 at Bendaña's request, which was also
2  memorialized with a promissory note and wired to Café Don Paco's account at Sterling
3  Bank in San Antonio, Texas, on January 5, 2011.  *Id.* ¶ 16-18.  As of January, 2012, Café
4  Don Paco had not repaid JBR in green coffee or cash.  *Id.* ¶ 27.

5  **C.   Procedural History**

6      To enforce the contracts and recover past losses, JBR brings claims of breach of
7  contract, fraud, and intentional interference with economic relationships.  *See generally*
8  Dkt. No. 1.  JBR filed its complaint on May 10, 2012 against Café Don Paco, Bendaña, and
9  Montealgre.  Dkt. No. 1.

10     On October 2, 2012, JBR attempted to serve the summons and complaint on Café
11 Don Paco, Bendaña, and Montealgre.  *See* Dkt. Nos. 11-14.  A process server mailed
12 copies addressed to the company, Bendaña, and Montealgre at the company's registered
13 address, 415 Embassy Oaks Drive, Suite 100, San Antonio, Texas.  *Id.*  The process server
14 also served a copy of the complaint and summons on the manager of Q Pharmacies, which
15 operates at 415 Embassy Oaks Drive.  Dkt. No. 14.  In addition, he delivered a copy to the
16 Texas Secretary of State.  Dkt. No. 14.  On October 9, 2012, the Texas Secretary of State
17 mailed a copy of the summons and complaint to Café Don Paco by certified mail.  Dkt. No
18 15.  As of March 11, 2013, Café Don Paco does not have a physical office in San Antonio,
19 Texas.  Dkt. No. 24-1 ¶ 10, Ex. F.

20     Bendaña does not have an identifiable address in Texas.  Dkt. No. 6.  On June 9,
21 2012, JBR emailed Bendaña the summons, complaint, and initial case management
22 schedule at the email address Bendaña used to communicate with JBR.  Dkt. No. 24-1 ¶ 5.

23     JBR served a copy of the summons and complaint at a Texas residence owned by
24 Montealgre and his wife, but the home had been sold.  Dkt. No. 6.  On June 12, 2012, JBR
25 contacted the Almori Foundation, one of Montealgre's publicly listed organizations, and
26 spoke with Maria Barrantes.  Dkt. No. 24-1 ¶¶ 2, 5, 6.  Barrantes confirmed that
27 Montealgre was on site and that she would personally deliver the complaint and summons
28 to him.  *Id.* ¶ 5.  JBR emailed Barrantes the complaint and summons.  *Id.* ¶ 5, Ex. D.

Bendaña responded to the June 9 email on October 23, 2012 and stated that he had "never been an employee nor partner of Café Don Paco Inc.," but is a partner in the Nicaraguan company, and that Montealgre is the owner of Café Don Paco, Inc. *Id.*, Ex. B. Bendaña provided JBR with the email addresses of Montealgre and his legal adviser, Mauricio Gomez, and copied them on his response. *Id.* On October 24, 2012, JBR again emailed the summons and complaint to the email addresses that Bendaña had responded from. *Id.*, Ex. C. JBR also emailed the complaint and summons to Montealgre and his legal advisor at the addresses provided by Bendaña. *Id.* No emails sent to Bendaña or Montealgre have been returned as invalid or undeliverable. *Id.* ¶ 11.

On October 30, 2012, this Court ordered JBR to complete service and file for default. Dkt. No. 10. JBR requested entry of default on January 1, 2013 and again on February 27, 2013. Dkt. Nos. 17, 21. The clerk denied both requests for failure to serve defendants. Dkt. Nos. 19, 26. JBR then requested that this Court authorize service by email and extend the period of time for service. Dkt. Nos. 24, 25, 27.

**D.   Jurisdiction**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because all parties are diverse from one another and the amount in controversy exceeds $75,000. Café Don Paco is incorporated under the laws of Texas and lists San Antonio as its headquarters. Dkt. No. 1 ¶ 2. Montealgre and Bendaña were residents of Texas and may now be residents of Nicaragua. *Id.* ¶¶ 2-4. JBR is a California corporation with its principal place of business in California. *Id.* ¶ 1. JBR claims $281,594.93 in damages plus interest, $500,000 in consequential damages, attorneys' fees, and costs under each of its substantive claims. *Id.* at 12-13. In addition, JBR has consented to the jurisdiction of a United States magistrate judge under 28 U.S.C. § 636(c). Dkt. No. 5.

## II. DISCUSSION

**A.   JBR Has Served Café Don Paco, Inc.**

Under Federal Rule of Civil Procedure 4(h) a corporation may be served in the same way as an individual under Rule 4(e)(1). Service of a corporation can therefore be

Case No. 12-cv-02377 NC
ORDER GRANTING MOTIONS FOR
ALT. SERVICE AND EXTEND TIME                    4

perfected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Here, service was attempted in Texas, where Café Don Paco is incorporated. Under Texas law, the Secretary of State may serve as an agent for service for both resident and nonresident companies. Tex. Bus. Orgs. Code Ann. § 5.251; Tex. Civ. Prac. & Rem. Code Ann. § 17.044. "[T]he Secretary of State's certificate is conclusive evidence that the Secretary of State, as agent of [the corporation], received service of process for [the corporation] and forwarded the service as required by the statute." *Capitol Brick, Inc. v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex. 1986). Furthermore, "[w]hen substituted service on a statutory agent is allowed, the designee is not an agent for *serving* but for *receiving* process on the defendant's behalf." *Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (emphasis in original). Therefore, as long as the record shows that the Secretary of State's office has received the summons and complaint for a corporation, service is complete. Plaintiff need not show that the defendant corporation actually received the summons and complaint from the Secretary of State. *Id.* (holding that Secretary of State certificate conclusively establishes service even where certified mail sent to defendant was returned as undeliverable).

  Here, JBR's process server delivered duplicate copies of the complaint and summons to the Texas Secretary of State. Dkt. No. 14. The Secretary of State certified that they received a copy on October 2, 2012 and that a copy was sent via certified mail to Café Don Paco, Inc. to the attention of registered agent Alvaro Montealgre at the 415 Embassy Oaks Drive address. Dkt. No. 15. This is all that is required under Texas law to perfect service of process on a corporation. Accordingly, Café Don Paco has been properly served under Rules 4(h) and 4(e)(1).

  The Court thus turns to whether JBR has served Bendaña and Montealgre. JBR alleges that Bendaña and Montealgre have eroded the barrier that distinguishes them as individuals from Café Don Paco as a distinct corporate entity by defrauding JBR, manipulating Café Don Paco's assets, and using corporate accounts and funds for personal

use. Dkt. No. 1 ¶¶ 33-36. In short, JBR alleges an alter ego theory of liability against Bendaña and Montealgre. "[Alter ego] theory may uphold service under appropriate circumstances." *Boyo v. Boyo*, 196 S.W.3d 409, 417 (Tex. Ct. App. 2006). The analysis undertaken to determine whether corporate entities, or a corporate entity and an individual, should be treated as one for the purposes of jurisdiction is different than for determining liability. *Berry v. Lee*, 428 F. Supp. 2d 546, 553, 556 (N.D. Tex. 2006) (finding that plaintiff must make a prima facie showing that the court has personal jurisdiction over defendant). Still, it is a "highly fact-based" analysis. *Id.* at 554.

"Under Texas law, alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) (internal citation and quotation marks omitted). Factors weighing in favor of piercing the corporate veil include: "common business names, business departments, offices, directors or officers, employees, stock ownership, financing, accounting, and payment of wages by one corporation to another corporation's employees and the rendering of services by employees of one corporation on behalf of another corporation." *Berry*, 428 F. Supp. 2d at 554. In addition, "for the alter ego doctrine to apply against an individual under this test, the individual must own stock in the corporation." *Bollore*, 448 F.3d at 325.

Here the facts alleged by JBR do not establish a prima facie case that warrants piercing the corporate veil and finding that service on Café Don Paco also constitutes service on Bendaña and Montealgre. Although JBR alleges that they each hold management positions, and are shareholders, JBR does not provide, and indeed may not know, what percentage of shares they own, how much control they exercise, and who else is involved in the management of the company. *Cf. Berry*, 428 F. Supp. 28 at 555 (finding undisputed that defendant was controlling shareholder and president and that corporate materials emphasized that defendant owned and solely controlled corporate entities).

//

Case No. 12-cv-02377 NC
ORDER GRANTING MOTIONS FOR
ALT. SERVICE AND EXTEND TIME 6

Accordingly, effective service on Café Don Paco through the Texas Secretary of State does not constitute effective service on Bendaña and Montealgre.

## B. Service by Email Is Not Prohibited by International Agreement and Is Reasonably Calculated to Notify Defendants.

Upon the belief that defendants Bendaña and Montealgre reside in Nicaragua, JBR has requested that this court authorize an alternative means of service under Federal Rule of Civil Procedure 4(f), which governs international service of process.

### 1. International agreement does not prohibit service by email.

An individual in a foreign country may be served by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. Proc. 4(f)(3); *see also Rio Properties, Inc v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). The Convention on the Service Abroad of Judicial and Extrajudicial Documents, known as the "Hague Convention" governs service of process between international countries who are parties. Although the United States is a party, Nicaragua is not. Hague Convention, November 15, 1965 165 U.N.T.S. 9432. In addition, the United States is a party to the regional convention, the Inter-American Convention on Letters Rogatory and its additional protocol. January 30, 1975 1438 U.N.T.S. 24386. Only countries which sign on to both the convention and its protocol are treaty partners with the United States. Convention on Letters Rogatory Additional Protocol, May 8, 1979 1438 U.N.T.S. 24386. Nicaragua, where defendants allegedly reside, is a signatory to the Inter-American Convention on Letters Rogatory, but it has not ratified the convention. *Id*. Moreover, because it is not a signatory to the additional protocol of that treaty, it is not a treaty partner with the United States. *Id.* Thus, no international agreement governs service of process between the United States and Nicaragua which could prohibit service by email.

### 2. Service by email complies with due process.

"Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process." *Rio Properties*, 284 F.3d at 1016. To comply with due process requirements, a court-ordered alternative method of service must

Case No. 12-cv-02377 NC
ORDER GRANTING MOTIONS FOR
ALT. SERVICE AND EXTEND TIME                7

also be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  In *Rio Properties*, the Ninth Circuit concluded that email was reasonably calculated to provide notice to the foreign defendant of the suit, and that it was the method of service most likely to reach defendant because the defendant had no recorded physical address in Costa Rica, but was communicative by email.  *Rio Properties*, 284 F.3d at 1017.  The Ninth Circuit also considered that plaintiff had (1) attempted to serve defendant in the United States at the address used to register defendant's domain name and through defendant's lawyer, and then (2) performed a cursory search for the defendant's physical address in Costa Rica.  *Id.* at 1016-17.

Courts in the Northern District have authorized service via email when a defendant's physical address is not an effective means of service, but when the plaintiff has a valid email address for defendant.  *See Facebook, Inc. v. Banana Ads, LLC*, No. 11-cv-03619 YGR, 2012 WL 1038752, *1-2 (N.D. Cal. Mar. 27, 2012) (finding that email service was the best way to apprise defendants with domain names registered in Panama and Thailand of the lawsuit because their physical address was unsuitable for service and the plaintiffs had valid email addresses); *Gucci America, Inc. v. Huoqing*, No. 09-cv-05969 JCS, 2011 WL 31191, *2-3 (N.D. Cal. Jan. 3, 2011) (finding email service appropriate when Chinese defendant operated anonymously via the Internet using false physical address information, and relied solely on electronic communications to operate his business); *Bank Julius Baer & Co. Ltd v. Wikileaks*, No. 08-cv-00824 JSW, 2008 WL 413737, *2 (N.D. Cal. Feb. 13, 2008) (finding email service appropriate where plaintiffs could not locate a valid physical address for defendants, and believed them to be foreign, but had email addresses for defendants); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. 06-cv-06572 JSW, 2007 WL 1140639, *1-2 (N.D. Cal. Apr. 17, 2007) (finding that email service was proper when physical addresses for foreign defendants could not be ascertained, but email had been effective means of communication between the parties).

Courts have not permitted service by email, however, where "there was no reasonable assurance that Plaintiff's email of the complaint and summons would be received at the email addresses provided by Plaintiff," and thus email was not reasonably calculated to inform defendants of the pending action. *Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-cv-02754 MSK, 2012 WL 502265, *1 (D. Col. Feb. 14, 2012). But, if plaintiff "has established that the email accounts they have for defendants have been effective means of communicating with the defendant," the valid addresses "serve the purposes of ensuring the defendants receive adequate notice of this action and an opportunity to be heard." *Friendfinder Inc.*, 2007 WL 1140639 at *2.

Here, JBR has attempted to serve Bendaña and Montealgre at the physical address for Café Don Paco, Inc. in San Antonio and at the Texas address for Montealgre and his wife. JBR then attempted to fax and email a copy of the summons and complaint to Montealgre at the Almori Foundation. JBR has been unsuccessful it its attempts to locate a physical address at which to serve Bendaña and Montealgre, but it has a reasonable assurance that the email addresses it has for both Bendaña and Montealgre are valid. JBR has provided evidence of Bendaña's email response, in which he confirmed his own email address and provided contact information for his brother-in-law, Montealgre and copied him on the email. Dkt. No. 24-1, Exs. A-D. Furthermore, no emails sent to Bendaña or Montealgre were returned as invalid or undeliverable. *Id.* ¶ 11. The Court finds that alternative service by email is reasonably calculated to give Bendaña and Montealgre notice of the suit and an opportunity to respond and is therefore appropriate.

**C.    Defective Service Is Permissible on Bendaña.**

Generally, "email service is not available absent a Rule 4(f)(3) court decree." *Rio Properties*, 284 F.3d at 1018; *Kexuan Yao v. Crisnic Fund, S.A.*, No. 10-cv-1299 AG, 2011 WL 3818406, *5 (E.D. Cal. Aug. 29, 2011) (noting that an emailed copy of a summons is not proper personal service without a court order). Courts may overlook, however, a non-compliant service of process provided that (1) the party to be served received actual notice; (2) the defendant would not be prejudiced by the defect in service; (3) there was a

justifiable excuse for the failure to properly serve; and (4) the plaintiff would be severely prejudiced if the complaint were dismissed. *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984).

Bendaña received actual notice of the lawsuit, complaint, and summons when JBR's counsel emailed him on October 23, 2012 and Bendaña responded. Dkt. No. 24-1, Ex. C. Because the alternative to the defective email service is a court ordered authorizing JBR to serve Bendaña again by email, service via the October 2012 email will not prejudice Bendaña. As discussed above, JBR sought numerous times to locate the defendants at their prior addresses in Texas without success. If the Court declined to authorize email service, JBR would risk prejudice as the statutes of limitations are ticking down. JBR states that events relevant to its fraud and breach of contract claims, which have three and four-year statutes of limitations, respectively, took place in October 2008 and March 2009. Cal. Code Civ. Proc. §§ 337, 339. More practically, however, dismissing JBR's claims for failure to serve would delay further a process that has already taken nearly a year and that will likely result in a similar motion six months or a year from now. The Court concludes that Bendaña has actual notice of the suit and will not be prejudiced by the defect in service. *See Kexuan*, 2011 WL 3818406 at *8 (declining to order service via email under Rule 4(f)(3) and opting instead "to deem [p]laintiff's numerous and varied attempts at service to be good enough" where defendants had actual notice).

Although JBR sent the summons and complaint to both Montealgre and his legal counsel, no evidence indicates that Montealgre has actual notice of the lawsuit. *Id.* ¶ 5-6. Barrantes informed JBR that she would deliver the complaint and summons to Montealgre, but JBR has not provided evidence that Barrantes did in fact give the documents to Montealgre. *Id.* ¶ 6. Thus, the Court cannot conclude that Montealgre has actual notice of the suit and so declines to allow defective service for Montealgre. Therefore, JBR must serve Montealgre via email.

//

Case No. 12-cv-02377 NC
ORDER GRANTING MOTIONS FOR
ALT. SERVICE AND EXTEND TIME           10

### D.   Extension of Time for Service Is Appropriate.

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within 120 days after filing the complaint. If a plaintiff shows good cause for the failure to serve, the Court must extend the time for service. Fed. R. Civ. P. 4(m). Good cause exists where the plaintiff has attempted to serve a defendant, was confused about the requirements for service of process, or was prevented from serving a defendant because of events outside of its control. *See Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985). A court may extend the time retroactively. *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003).

JBR requests a retroactive extension of the 120 day period in which to serve defendants. As discussed above, JBR made many attempts at service within the 120 day period. JBR actually served Café Don Paco on October 9, 2012 by delivering process to the Texas Secretary of State. Although this is outside the 120 day window, the Court finds that JBR's diligence in attempting to locate defendants and serve them personally establishes good cause for its delay.

The 120 day timeframe imposed by Rule 4(m) does not apply to service in a foreign country under Rule 4(f). Fed. R. Civ. P. 4(m). Because Bendaña and Montealgre now reside in a foreign country, and JBR will perfect service on them there, JBR is not bound by the 120 day window in which to serve Bendaña and Montealgre.

## III. CONCLUSION

Plaintiff JBR's motions for alternative service and extension of time are GRANTED. The Court finds that Café Don Paco was properly served under Texas law, and defective service as to Bendaña is permissible because he has actual notice of the suit. Therefore, JBR must SERVE defendant Montealgre by email by May 10, 2013 at 5:00 p.m. PDT. The Court will hold a further case management conference on August 7, 2013 at 3:00 p.m.

IT IS SO ORDERED.

Date: May 6, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge